# EXHIBIT A

GROUND FOUR

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant holds that counsel for the defense Stephen Illa's deficient performance before and during trial rendered the trial results unreliable and fundamentally unfair resulting in a miscarriage of justice.

On December 21 2016 Mr. Illa received a letter from the government indicating a willingness to enter into negotiations of a plea agreement. Mr. Illa did not inform the defendant of this offer until after trial. In fact Mr Illa told the defendant on numerous occasions "the government is not willing to make any plea offers in this case." An obvious untruth showing absolutely no loyalty to the defendant whatsoever.

"During plea [agreements] defendants are entitled to effective assistance of counsel." Lam v Martinez 2016 US Dist Lexis 53039 (9°Cir) (quoting: McManny v Richardson 397 US 759, 771, 90 S.Ct 1441, 25 Led2d 763 (1970)); Van Wyk v Beard 2016 US Dist Lexis 76803 (9°Cir) (quoting Missouri v Frye 566 U.S. __, 132 S.Ct. 1899, 182 Led2d 379, 384.) (holding "the simple reality that 97 percent of federal convictions and 94 percent of state convictions are the result of plea bargains. Plea bargains have become so central to todays criminal justice system, that defense counsel must meet responsibilities in the plea bargain process to render adequate assistance of counsel that the sixth amendment requires at critical stages of the criminal process.") Id at 182 Led2d at 390.

Mr. Illa did not simply forget to inform the defendant about the offer

I.A.C.                              (17)

TO NEGOIATE A PLEA AGREEMENT FROM THE GOVERNMENT. MR. ILLA TOLD THE DEFENDANT "NO SUCH OFFERS WERE BEING MADE." A BOLD FACED LIE.

MR ILLA FAILED TO INVESTIGATE DEFENDANTS VERSION OF EVENTS.

1) DEFENDANT TOLD MR ILLA ABOUT MS LUKSANS BROTHER CHARLES WHO IS A PEDOPHIL WITH A LONG HISTORY OF MOLESTING THE CHILDREN IN MS LUKSANS FAMILY, STARTING 55 YEARS EARLIER WITH MS LUKSAN AND HER SISTERS WHEN MS LUKSAN WAS 8 YEARS OLD, AND CONTINUING TO INCLUDE MS LUKSAN'S DAUGHTER, NEICES, SISTERS GRANDDAUGHTERS AND NOW MS. LUKSANS GRAND DAUGHTERS. THE DEFENDANT TOLD MR ILLA CHARLES WAS A COMMON OVER NIGHT GUEST AND HAD UNSUPERVISED ACCESS TO DEFENDANTS ELECTRONICS, AND THIS COULD BE VERIFIED BY QUESTIONING MS. LUKSANS SISTERS (ROSIE AND PENNY) AND BROTHER IN LAW GUY MYERS. MR. ILLA MADE NO EFFORT TO CONTACT ANY OF THE POTENTAL DEFENSE WITNESS'.

2) DEFENDANT TOLD MR ILLA THAT THE ALLEGED FINGER PRINT COULD NOT BE HIS AS DEFENDANT DID NOT TAKE THE PHOTO. THE PRINT MUST BE CHARLE'S AS HE IS THE ONLY PERSON WHO HAD ACCESS TO THE PHONE AND THE VICTIM SO WE NEEDED A FINGERPRINT EXPERT, BECAUSE IN THE ELEVEN FINGER PRINT RIDGES VISIBLE IN THE PHOTO, IN COMPARING THEM TO THE DEFENDANTS FINGERPRINT CARD, NOT ONLY DO NONE OF THE FINGERPRINT RIDGES MATCH, BUT THEIR ARE SIX OBVIOUS UNIQUE DIFFERENCES THAT MAKE IT IMPOSSIBLE TO ALLEDGE THE PRINTS CAME FROM THE SAME FINGER. MR ILLA DID NOT SEEK TO OBTAIN AN EXPERTS OPINION IN THIS MATTER. NOR DID HE ATTEMPT TO IMPEACH THE GOVERNMENTS EXPERT WITNESS WITH THE OBVIOUS UNIQUE DIFFERENCES BETWEEN THE TWO SETS OF PRINTS.

L.A.C.                              (10)

3) Defendant informed Mr Illa after viewing the discovery, that all of the evidence of child pornography appears on the defendants electronics a month after Mr Thorson met Ms Luksan and her brother Charles. That there is 13 to 15 years of data on Mr Thorson's electronics and prior to February 2015, no pornography of any kind was located on defendants devices. Nor any of the other items in Detective Gendreau's boilerplate "expert opinion" on the "characteristics of individuals involved with child pornography." Thus, by raising these issues at trial and by investigating the fact that defendant never even looks at any kind of pornography counsel could have raised "another suspect defense." Mr. Illa did not investigate any of this.

4) During opening statements defense counsel told obvious and outrageous lies to the jury when the truth would have served, thus undermining his credibility. Defense counsel told the jury that 1) not all the people living in my home could afford cell phones. That was a lie with no purpose and easily disproved. 2) He then tells the jury I was paying most the household bills, another obvious lie for no reason. 3) Then he says Ms Luksan heard me talking on the phone and hanging up quickly, "suspicious behavior" he says. It was another senseless lie that underminded my character and his credibility. See pg 13-14 opening statements transcript. These were unreasonable lies that served no purpose and completely destroyed the defenses credibility in front of the jury.

I.A.C.                    (12)

5) Defendant told Mr. Illa that he has a tattoo on his penis that he aquired in prison in 1988 and that there was a record of this tattoo in his prison record as defendant received an infraction for rule violation because of it. And that his friend Shawn Olsen, and his ex-wife Judith Legg could testify to the fact of the tattoos existance, which would prove Mr Thorson was not the person in the images of child pornography. And Mr. Thorson supplied locations for these two witnesses. Mr. Illa never contacted either witness. Mr Thorson also told his state public defender Ms Josephine Wiggs-Martin about this tattoo in July 2016, shortly after his arrest. Mr. Illa did not investigate any of these things.

"Counsels function is to assist the defendant and hense counsel owes the client a duty of loyalty." US v Chan 2016 US Dist Lexis 19261 (9th Cir)

Had defense counsel preformed his duty to the defense the outcome of trial would have been very different. Mr Illa had no strategy except to go through the motions of a trial without expending to much effort.

6) Counsel did not attempt to impeach Government witness' when it was obvious they were perjuring themselves in light of the police reports and facts established during pretrial through police reports and judicial admission. Trinidad Y Garcia v Thomas 683 F3d 952, 982 (9th Cir 2011) "Judicial admission is binding

I.A.C.                                    (20)

ON BOTH TRIAL COURT AND APPELLANT COURTS" LITIGANTS WE HAVE LONG RECONIZED ARE ENTITLED TO HAVE THEIR CASE TRIED ON THE ASSUMPTION OF THE FACTS, STIPULATED ON THE RECORD, WERE ESTABLISHED, "WE MUST TREAT THEM AS THE CLEAREST PROOF." id.  MR ILLA KNEW OFFICER GALLAGHER AND MS. LUKSAN WERE PERJURING THEMSELVES IN RELATION TO THE ILLEGAL SEARCH OF THE CELL PHONE AND MADE NO OBJECTION NOR DID HE ATTEMPT TO IMPEACH OFFICER GALLAGHER WITH HIS SWORN POLICE REPORTS.

8) COUNSEL MADE A TOKEN EFFORT TO SUPPRESS THE EVIDENCE FROM THE ILLEGAL SEARCH OF DEFENDANTS CELL PHONE, BUT DID NOT RESEARCH THE LAW PERTAINING TO THE "PRIVATE SEARCH DOCTRINE" AND THUS, PROVIDED LESS THEN EFFECTIVE ASSITANCE OF COUNSEL IN THIS AREA AND DID NOT EVEN FILE A MOTION ON THE ILLEGALITY OF THE GENERAL WARRANT ISSUED THAT ALLOWED A GENERAL RUMMAGING THROUGH THE DEFENDANTS HOME AND DATA GOING BACK 15 YEARS TO SEARCH FOR "CONTRABAND, THE FRUITS OF THE CRIME, OR "THINGS OTHERWISE CRIMINALLY POSSESSED; OR WEAPONS OR OTHER THINGS BY MEANS OF WHICH A CRIME HAS BEEN COMMITTED." WHICH HAS NO LIMITING FACTORS AS TO WHEN PROBABLE CAUSE EXISTED TO BELIEVE A CRIME WAS COMMITED OR TO EXACTLY WHAT CRIME THERE WAS PROBABLE CAUSE TO BELIEVE MIGHT HAVE BEEN COMMITTED. THUS, MAKING THE WARRANT ISSUED A GENERAL WARRANT. COUNSEL WAS INEFFECTIVE IN PROTECTING THE DEFENDANT FOURTH AMENDMENT RIGHTS. DEFENDANT CONTINUALLY PROMPTED COUNSEL WITH STRATEGY, MOTIONS AND CASE LAW WHICH WAS UNIFORMILY IGNORED EVEN THOUGH COUNSEL HAD NO

I.A.C.                               (21)

strategy of his own. As the Supreme Court stated in Strickland v Washington "Counsels actions are usually based, quite properly, on informed strategic choices made by the defendant" id at 466 US 668, 696, 104 S.ct. 2052, 80 L.ed.2d 674 (1984) In the instant case counsel refused to apply good sound Fourth Amendment strategy and defendant was compelled to insist counsel state on the record pertinent case law and legal conclusions just to attempt to preserve such issues for appeal. Such as searching a cell phone beyond what is in plain view without a search warrant is in conflict with Supreme Court precedent in California v Riley.

Defense counsel did not respond to government pretrial motions under F.R.C.P Rule 16 and Federal Rules of Evidence thereby precluding the the defendant from making an affirmitive defense. See Governments motion to preclude other suspect. Document 25 Pg 1-4.

The Ninth Circuit stated in Lunbery v Hornbeak 605 F.3d 754, 760 (2010) "Due Process includes a right to a meaningful opportunity to present a complete defense" Crane v Kentucky 476 US 683, 690, 102 S.ct. 2142 (1984) The constitutional right is violated by the exclusion of probative admissible evidence that another person may have committed the crime.

Defendant was denied his Sixth Amendment rights, this warrants reversal and remand for new trial.

C.A.C.                    (22)