UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT D. THORSON, | CASE NO. C18-136 RSM |
| Petitioner, | ORDER DENYING PETITION |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I. INTRODUCTION

This matter is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). Dkt. #1. Petitioner Robert D. Thorson ("Mr. Thorson") challenges his concurrent 324-month and 240-month sentences imposed on him by this Court following his jury-trial convictions on charges of production of child pornography[1] and possession of child pornography.[2] *Id.* at 1; *United States v. Thorson*, Case No. CR16-277RSM, Dkt. #132 (W.D. Wash. May 12, 2017).[3] The Government

---

[1] A violation of 18 U.S.C. §§ 2251(a) and 2251(e).

[2] A violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

[3] Hereafter, docket citations to Thorson's criminal case will follow the convention: "Crim. Dkt."

ORDER – 1

opposes Mr. Thorson's § 2255 Motion. Dkt. #33. After full consideration of the record and for the reasons set forth below, the Court denies Mr. Thorson's § 2255 Motion.

## II. BACKGROUND

The Government presents the factual background of this case as it was presented to the Ninth Circuit Court of Appeals in Mr. Thorson's direct appeal.[4] The Court notes that Mr. Thorson did not object to the Government's factual background and that Mr. Thorson's factual background, as laid out in his § 2255 Motion, is not entirely inconsistent with the Government's. The Court therefore adopts the Government's factual background as provided and will consider any contested facts in the context of the arguments.

### A. The Trial Evidence.

This case involves child pornography found in the home of Becky Luksan in May 2016. At that time, eleven people lived in Luksan's five bedroom house. Six were adult family members: Luksan; Thorson (Luksan's boyfriend); Angela Romero (Luksan's daughter); Jose Romero (Luksan's son-in-law); Frederick Williams (Luksan's grandchild); and Diego Castaneda (Luksan's grandchild). ER_443-44, 446, 450-51, 587-89.[5] Three were Luksan's minor grandchildren: B.C. (fourteen years old), E.C. (eight years old), and C.C. (five years old). ER_446, 448, 588-89. The last two occupants—Elogio Velasquez Mendoza and "Bertie"—were adult male friends of Angela and Jose Romero. ER_445, 590.

Luksan and Thorson shared one bedroom, which also had a recliner on which C.C. and E.C. sometimes slept. ER_445, 459-60, 521. Angela and Jose Romero shared another bedroom; Williams and Castaneda shared a bedroom; and B.C., C.C., and E.C. shared a bedroom. ER_445-46, 520-22, 589. Velasquez Mendoza slept in the fifth bedroom, and Bertie slept in an open area near the furnace and water heater. ER_523-24, 590.

---

[4] "This factual summary is identical to that presented in the government's Answer to Thorson's direct appeal. For the convenience of the Court, [Dkt. #33-9] contains the excerpts of the record ('ER') submitted to the Ninth Circuit which are hereby adopted and incorporated by reference." Dkt. #33 at 3 n.3.

[5] The Court's citations to "ER" are from the excerpts of record filed in the Ninth Circuit Court of Appeals and have been filed here by the Government as Dkt. #33-9.

ORDER – 2

1. **The Child Pornography Found on Thorson's Cellular Telephone.**

On May 30, 2016, while Thorson was at work, Luksan picked up a table she had purchased using Thorson's OfferUp account (OfferUp is an online marketplace for used goods). ER_453-54. Because she had used Thorson's OfferUp account, Thorson left Luksan his cellular telephone so that she could communicate with the seller via the OfferUp application on that phone. ER_455-56.

After returning home, Luksan began "playing with his phone," and she found some text messages between Thorson and another woman, as well as a folder labeled "me." ER_455-57. Luksan opened that folder and viewed a video. ER_457, 516. This video depicted E.C. sleeping on a recliner in Luksan's living room; E.C. was covered with a polka-dot blanket, and the video showed a white man's erect penis pushing up against E.C.'s mouth; the man was also wearing a blue-and-white striped shirt. ER_466, 530; Gov't Exh. 1B (video recovered from Thorson's cellular telephone). Luksan "recognized" the man in the video and "just knew" he was Thorson (Thorson and Luksan had a sexual relationship). ER_451, 457, 514-15, 531. She also recognized a black shoe the man was wearing as belonging to Thorson. ER_516-17.

Luksan then called out to Angela Romero, who immediately called the police. ER_457, 593-94. A responding officer viewed the video of Thorson and E.C., after which the phone was seized. ER_483-84, 486-90, 516. The officer also took statements from Luksan and Angela Romero. ER_484, 490, 594. Thorson returned home while this investigation was being conducted, whereupon he was arrested. ER_484-85, 487-88.

2. **The Search of Luksan's Home and Thorson's Computer and Cellular Telephone.**

On June 2, 2016, a search warrant was executed on Luksan's home. ER_413-14. In the bedroom Luksan and Thorson shared, the police recovered a Dell computer that belonged to Thorson, along with three USB drives and a ScanDisk memory card that were connected to that computer, and that also belonged to Thorson. ER_416-18, 428-29, 461-62, 470-71. Elsewhere in the bedroom, the police found additional USB drives and some CD-ROMs and DVD-R discs. ER_418-19, 437-38. The police also seized a polka-dot blanket from that bedroom, a blue-and-white striped men's dress shirt from Thorson's side of the closet, and a pair of black loafers. ER_416-17, 419-20, 423, 428, 430-32, 460-61; Gov't Exh. 21G (search warrant return). That striped shirt was the one Thorson was wearing in the video he took of E.C.; the recovered polka-dot blanket was also visible in that video, as was a carpet in Luskin's living room. ER_466, 680-81.

The following items were forensically examined: Thorson's cellular telephone; Thorson's computer; two USB drives that were attached to that computer (one manufactured by PNY, the other by Verbatim); and three DVD-R disks—including one labeled "Little" and another labeled "Chub"—found in Thorson's dresser. ER_419, 637-39, 676-77. The video of Thorson placing his penis on E.C.'s mouth while she was sleeping was found on Thorson's phone, as were other pornographic still images of E.C. and Z.G. (Thorson's twelve-year-old second cousin). ER_609, 616, 641-43, 654-60, 678-79, 681-82; Gov't Exhs. 1B-1E (video and still photographs recovered from Thorson's cellular telephone). The photos of E.C. were images of Thorson inserting his penis into E.C.'s mouth while she slept on a different occasion than depicted in the video (Luksan again identified Thorson's penis based on their "sexual relationships"). ER_468-70, 596, 642, 681-82; Gov't Exh. 1D (photos of E.G. found on Thorson's cellular telephone). The photos of Z.G. depicted her sleeping in a tank top and shorts, with Thorson's hand pointing to Z.G.'s vagina. ER_611, 616-18, 643; Gov't Exh. 1E (photos of Z.G. found on Thorson's cellular telephone).

On Thorson's PNY USB drive, several videos were found that had been taken from a camera hidden in one of Luksan's bathrooms. ER_472, 497, 499-500, 644-45. These videos showed B.C., C.C., and E.C. variously entering and exiting the shower while nude. ER_471-80, 492-97, 685-88; Gov't Exhs. 3B, 4A, 5A, 6A, 7A (videos recovered from Thorson's PNY USB drive). Thorson was captured on some videos setting up and removing the hidden camera (ER_472, 475-77, 479, 496-97, 687-88), and his voice was heard on others. ER_473, 476, 480. In one video, Thorson was filmed wearing a Mickey Mouse shirt Luksan gave him that said, "Don't Mess with the Mouse." ER_478-80, 501. That shirt was recovered from Luksan's home. ER_688. Another video depicted Thorson's tattooed arm (ER_495, 689), which was photographed after his arrest. ER_389-91.

On Thorson's Verbatim USB drive, the police found still photos of Z.G. taken with Thorson's cellular telephone. ER_647, 666; Gov't Exh. 8B (photos of Z.G. found on Thorson's Verbatim USB drive). These were the same lascivious photos of Z.G. that were found on Thorson's cellular telephone. ER_655, 691-92. A still photograph of the hand pointing at Z.G.'s vagina was submitted for fingerprint analysis, and after enhancing the image the analyst determined the visible ridges on one finger matched Thorson's fingerprint. ER_390-92, 542-44, 548-55, 558-59, 562-65, 568-70, 691-94.

On a DVD-R found in Thorson's dresser, the police found a clip from the "Baby J" child pornography video; this is a four-hour video filmed in Georgia that depicts a young girl (less than six years old) being repeatedly raped over a two-year period. ER_362-66, 647-48, 690; Gov't Exh. 9B (clip from "Baby J" video found on Thorson's DVD-R). On Thorson's computer, images from the "Sisters" child pornography series were found; these images depict three young girls (one no older than five years old) being sexually abused in New Hampshire and Florida

over a four-year period. ER_372-75, 443, 653; Gov't Exh. 2F (images from "Sisters" series found on Thorson's computer). Images from the "Valentine" child pornography series were also found on Thorson's computer; these images depict a young girl (no older than five years old) being sexually abused in Oregon over a nine-month period. ER_378-83, 643, 653; Gov't Exh. 2E (images from "Valentine" series found on Thorson's computer). Images of Z.G. sleeping in a tank top and shorts—the same images found on Thorson's cellular telephone and the Verbatim USB drive—were also found on his computer. ER_616, 618-19, 648-50; Gov't Exh. 2C (photos of Z.G. found on Thorson's computer).

### 3. Thorson's Post-Arrest Efforts at Witness Intimidation.

After his arrest, Thorson sent Luksan two letters from jail trying to dissuade her from cooperating with the authorities. In the first letter, Thorson told Luksan that she needed to "change her statement," and that he wanted Luksan to tell the state prosecutor: "after thinking about it a bit, you are not sure that it is me, as I cannot sustain an erection very long without a lot of manual stimulation, and I don't even like blow jobs, as I was molested as a child." ER_504. Thorson threatened that if Luksan did not recant by June 16, 2016, he would "take action of my own" and "destroy everyone's life" by making all sorts of allegations against Luksan, such as accusing her of abusing and neglecting her grandchildren, harboring illegal aliens, and defrauding the IRS. ER_505-08, 525-26. Thorson also said that if Luksan took his letter to the authorities, she would be arrested based on his allegations. ER_507. Thorson told Luksan to destroy the letter to ensure prosecutors did not find it, warning that he was "fighting for my life and I will do what I have to." ER_507.

In a second letter, Thorson again threatened to accuse Luksan of abusing and neglecting her grandchildren, as well as reporting her to the IRS. ER_510-11, 527-28. Thorson told Luksan, "If you don't back off on me, I will toss your family tree into the wood chipper," and said he would tell the authorities that Luksan and others engaged in all manner of sexual impropriety, including with children. ER_513. Thorson told Luksan that she should leave town if his case went to trial, and said that if she did not provide a statement exonerating him and stop cooperating with the authorities by June 16, 2016, he would "cut loose the dogs of war and destroy everything." ER_511-12.

## B. The Defense Case.

### 1. Thorson's Testimony Denying Guilt.

Thorson testified that, in addition to the adult men who lived in Luksan's house, Luksan's brother Charles frequently stayed in an adjacent camper. ER_702-04, 707-08. Thorson said that when Charles stayed there, he would "[g]enerally" let Charles use his cellular telephone while he (Thorson) was at work. ER_724-25. Thorson also let Luksan borrow his phone occasionally.

ER_725. For a time, Thorson had his phone password-protected—though he told "everybody" in the house the password—and he later stopped using the password protection feature. ER_724-25.

Regarding his computer, Thorson said it was not password protected and that Charles and the children also used it. ER_726, 763. Thorson denied plugging in the Verbatim USB drive that had the images of Z.G., but admitted that the other connected USB drives were his—including the PNY USB Drive—which he claimed were used as extra memory to speed up his video games, and for storing some documents and old photographs. ER_731-34, 763. Thorson denied owning any of the DVD-R discs founds in his and Luksan's bedroom, and indicated they were likely Luksan's. ER_736-37, 763, 771. Thorson also denied ever wearing the Mickey Mouse shirt seized from his bedroom. ER_763-64, 766. Thorson did acknowledge that the striped shirt seized from his bedroom looked "similar" to the shirt the man wore in the video found on his cellular telephone, but said that Luksan's brother "often wore my clothes" and that Charles "may have been wearing it." ER_765.

Thorson testified that every bedroom in Luksan's house had its own lock; that a room's occupants had keys to their individual room; and that only Luksan had keys to every bedroom. ER_710-11. Thorson also said there was a security camera that captured the living room and the area in front of the upstairs bedrooms, and that this data was backed up on an offsite server that only Luksan could access (the camera also maintained a small amount of data on an internal SD card). ER_712-24, 774-75, 791-93. Thorson also suggested that Luksan installed a hidden "nanny cam" in the bathroom. ER_728-31.

Thorson denied any interest in child pornography, and said he was unaware of the child pornography found in his bedroom and on his computer and cellular telephone. ER_737, 767-70. Thorson said someone else was responsible for creating the child pornography found on his electronic devices, and suggested Angela Romero and/or Luksan "was setting me up." ER_737-39, 770-71, 776. Thorson admitted sending the threatening letters to Luksan after his arrest, and said he reacted that way because he "was being set up" and he wanted Luksan "to back off" and "tell the true story." ER_738-39, 771-74, 790-91.

According to Thorson, the backup data from Luksan's security camera would reveal the true perpetrator. ER_739-40. Thorson said he could not be the man in the video found on his phone because he was impotent and "cannot obtain an erection." ER_740, 772, 790. Thorson also said the penis in that video could not be his because his penis has a tattoo, while the one in the video does not. ER_740-41, 777, 790. Thorson said that on his wedding night in 1988, he tattooed a blue "A" on the head of his penis ("A" being his deceased wife's first initial). ER_733, 747, 776-77, 786-89, 843-44, 846; Gov't Exh. 33A (photographs of Thorson's penis).

### 2. Thorson's Testimony about His Prior State Court Prosecution.

Thorson was originally charged in state court with various offenses stemming from the child pornography found on his electronic devices. ER_777, 844. During that prosecution, the state court ordered that Thorson's penis and tattoos be photographed. ER_777. Thorson wrote a letter to the state judge, complaining that this order required him "to provide evidence against myself in a criminal proceeding." ER_781; SER_2. Thorson also directed his attorney to appeal that order because, in his view, any such photography would "totally be incriminating" and would amount to providing evidence against himself. ER_782-83. Thorson also said he objected to being photographed in front of women (the state prosecutor and his attorney were both women). ER_782-84.

Because of that appeal, Thorson's penis and tattoos were not photographed before his case was accepted for federal prosecution (this resulted in the dismissal of the state prosecution and his pending appeal). ER_779, 784. Thorson's penis was not photographed until after he testified about his tattoo on direct examination. ER_784-86.

### C. The Government's Rebuttal Case.

The government called a Washington state appellate prosecutor, who discussed Thorson's appeal of the state court order requiring that his penis and other body parts be photographed, and the stay of that order that resulted from the appeal. ER_795-803. The government also called a federal agent who was supposed to assist state officials in taking those photographs, who explained that no women were to be present when Thorson was photographed. ER_804-06. An agent with the Bureau of Prisons testified that while tattoo materials are prohibited in federal correctional facilities, inmates often fashion homemade tattoo materials and it is "[v]ery possible" to get a tattoo while incarcerated. ER_826-28, 835-36. It is even possible for a federal inmate housed in the Special Housing Unit (SHU) to construct a homemade tattoo gun; although cells in the SHU lack electrical outlets, an inmate could utilize a battery-powered tattoo gun. ER_825-36.

Becky Luksan described the surveillance camera in her home, which was focused primarily on the living room, but which also captured the door to the children's bedroom. ER_811, 815-17. Thorson installed that camera, and he was the person who oversaw any monitoring of the camera's recordings. ER_810-12. Luksan gave the authorities the SD cards used in that camera, and said the SD cards were the only medium she was aware of for storing any recordings. ER_812-13, 817-23. Law enforcement found no recordings of sexual abuse on those SD cards. ER_820-24. Finally, Luksan said Thorson had no problem maintaining an erection during their relationship, and that she did not recall ever seeing a tattoo on his penis. ER_813-14.

### D. The Defense's Sur-Rebuttal Case.

Thorson was incarcerated in a state facility from May 2016 until October 2016. ER_844. Thorson said he was housed in the SHU, in a cell with no electrical outlet, and said that batteries were not permitted in the state facility. ER_845. Thorson, though, was allowed to mingle with the general population for "like, three hours a day," in a room that provided access to other inmate's cells (though that meeting area was under surveillance). ER_845. Thorson denied tattooing his penis while in state custody. ER_846.

Thorson was transferred to federal custody in October 2016. ER_838. Thorson said he was likewise housed in the SHU, during which time his cell and person were routinely searched. ER_838-40, 841-43. Thorson's cell had no electrical outlet, and he said he never had batteries in his cell. ER_841. Thorson denied tattooing his penis while in federal custody ER_844.

### [E.] THORSON'S APPEAL

On May 12, 2017, Thorson filed notice of a direct appeal. [Crim. Dkt. #130]. In his appeal, Thorson raised a single issue, to wit: "Did the government commit misconduct when it cross-examined Thorson without a good faith basis, commented on Thorson's right to counsel and to present a defense, and commented on his exercise of his right to remain silent?" See *Thorson COA Opening Brief*, p. 1 (COA 17-30100, Dkt. 15), attached as [Dkt. #33-2].

The government filed an Answer Brief. See *Government's COA Answer Brief*, p. 1 (COA 17-30100, Dkt. 39), attached as [Dkt. #33-3]. Thorson did not file a reply brief.

The Ninth Circuit denied Thorson's direct appeal. See *COA Memorandum Opinion*, p. 1 (COA 17-30100, Dkt. 62), attached as [Dkt. #33-1].

Dkt. #33 at 3–11.

In this habeas proceeding, Mr. Thorson sought several times to amend his § 2255 Motion, but ultimately elected to proceed with his § 2255 Motion as originally filed. Therein, Mr. Thorson asserted a right to relief on eight different grounds: (1) "Sufficiency of Evidence," (2) "Congressional Overreach," (3) "Speedy Trial Act of 1974," (4) "Ineffective Assistance of Counsel," (5) "Witness Perjury," (6) "Post-*Miranda* Silence," (7) "Judicial Bias," and (8) "*Faretta* Hearing." Dkt. #1. Mr. Thorson's claim of ineffective assistance of counsel was

previously dismissed after he refused to waive the attorney-client privilege so that the Government could question his trial counsel. Dkt. #32.

### III. DISCUSSION

#### A. Mr. Thorson's Requests on Reply

The Court first addresses two issues raised by Mr. Thorson in his reply to the Government's Answer. First, Mr. Thorson argues that Mr. Brian T. Moran—appointed as the United States Attorney within this District during the pendency of this action—is not an attorney of record and "requests an order from this Court striking all motions submitted by Brian T. Moran." Dkt. #37 at 2. Mr. Thorson appears to be confused by the fact that the Assistant United States Attorneys who have appeared in this case submitted their materials in behalf of the United States Attorney under whom they serve. Unsurprisingly, Mr. Thorson does not submit any legal authority supporting his argument and the Court is not aware of any. Accordingly, Mr. Thorson's request is denied.

Secondly, and in the alternative, Mr. Thorson "seeks leave to seek review of this Court's orders by the Ninth Circuit Court of Appeals through an interlocutory appeal." *Id.* Because the Court otherwise denies Mr. Thorson's § 2255 Motion, the Court need not address Mr. Thorson's request in this regard. Mr. Thorson may proceed as permitted under the applicable rules and statutes.

#### B. Legal Standard Related to 28 U.S.C. § 2255 Motions

A Section 2255 motion permits a federal prisoner in custody to collaterally challenge his sentence on the grounds that (1) it was imposed in violation of the Constitution or laws of the United States, (2) that the court lacked jurisdiction to impose the sentence, (3) that the sentence exceeded the maximum authorized by law, or (4) that the sentence is otherwise subject to

collateral attack. 28 U.S.C.§ 2255(a). A petitioner seeking relief under Section 2255 must file his motion within the one-year statute of limitations set forth in 28 U.S.C. § 2255(f).

### C. Mr. Thorson's Claims Are Barred

Mr. Thorson's claims, however, fail to satisfy several procedural hurdles. A Section 2255 motion may not raise claims that the petitioner has had a full opportunity to be heard on during the criminal trial phase and direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003). Where a criminal defendant fails to raise an issue before the trial court, or presents the claim but then abandons it, and fails to include it on direct appeal, the issue is deemed "defaulted" and may not be raised under Section 2255 except under unusual circumstances. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also United States v. Braswell*, 501 F.3d 1147, 1149 & n.1 (9th Cir. 2007). At the same time, "[a] collateral attack is the 'same case' as the direct appeal proceedings for purposes of the law of the case doctrine." *United States v. Jingles*, 702 F.3d 494, 500 (9th Cir. 2012) (citing *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972)). Thus, claims that were pursued and decided on direct appeal cannot be relitigated in a subsequent Section 2255 proceeding.[6]

Many of Mr. Thorson's claims appear barred here. First, Mr. Thorson's Post-*Miranda* Silence claim[7] has already been thoroughly litigated. This Court rejected similar arguments in

---

[6] Courts can depart from the law of the case if "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *United States v. Jingles*, 702 F.3d 494, 503 (9th Cir. 2012) (citations and internal quotation marks omitted).

[7] Thorson's argument centers around the fact that he was cross-examined on his refusal to allow his hands and penis to be photographed during state court proceedings. Thorson maintains that this was merely his "staying silent" and that using it against him was a violation of his Fifth Amendment rights. Dkt. #1 at 50–53. Thorson further argues that the Government shifted the burden of proof by arguing that Thorson would have allowed photographing if he was in fact innocent. *Id.* at 53.

ORDER – 10

Mr. Thorson's post-trial Motion for a New Trial. Crim. Dkt. #135 at 5. This was also a basis of Mr. Thorson's direct appeal: "The Government Committed Misconduct in Three Ways: Cross-Examining Thorson Without a Good Faith Basis, Commenting on Thorson's Right to Counsel and to Present a Defense, and Commenting on His Exercise of His Right to Remain Silent." *United States v. Thorson*, Case No. 17-30100, Dkt. #15 (9th Cir. Sept. 25, 2017)[8]; Dkt. #33-2. As the Government points out—and as Mr. Thorson effectively concedes by not contesting on reply—the Ninth Circuit concluded "that there was no improper comment on Mr. Thorson's right to silence." Dkt. #33 at 23. Mr. Thorson cannot relitigate his post-*Miranda* silence claim.

Conversely, Mr. Thorson failed to raise his other issues on appeal, despite a full and fair opportunity to do so. *See Massaro*, 538 U.S. 500 (claims may not be raised in a Section 2255 motion if the petitioner had a full opportunity to be heard on the claim during the criminal trial phase and direct appeal); *Hammond v. United States,* 408 F.2d 481, 483 (9th Cir. 1969) ("Section 2255 may not be invoked to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction."). Mr. Thorson cannot raise these claims now unless he can overcome his procedural default.

To overcome that bar, a petitioner must show "both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982).[9] To demonstrate "cause" for a procedural default, a petitioner generally must show that "some objective factor external to the defense impeded" his adherence to a procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); s*ee also United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003). The "prejudice" prong of the

---

[8] Hereafter, docket citations to Thorson's appellate case will follow the convention: "App. Dkt."

[9] The procedural default may also be overcome by showing actual innocence. *See Bousley*, 523 U.S. at 622. Thorson has not raised that issue here.

ORDER – 11

test requires demonstrating "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 at 170.

The Government argues that Mr. Thorson fails to adequately argue cause and actual prejudice and therefore cannot satisfy the exception that would allow him to raise his six additional arguments. *See* generally, Dkt. #33. In reply, Mr. Thorson argues that he was denied effective assistance of counsel because his appellate counsel failed to raise the issues. Dkt. #37 at 3–4; *Skurdal*, 341 F.3d 921 (ineffective assistance of counsel can serve as cause for failing to raise an issue on appeal). But Mr. Thorson does not demonstrate that his appellate counsel was ineffective, and it was for Mr. Thorson's appellate counsel to determine the issues appropriate for appellate review. *Jones v. Barnes*, 463 U.S. 745, 751–53 (1983); *Amadeo v. Zant*, 486 U.S. 214, 221–22 (1988) ("a 'tactical' or 'intentional' decision to forgo a procedural opportunity normally cannot constitute cause"). Further, Mr. Thorson was able to bring additional issues to the Ninth Circuit's attention by submitting a pro se supplemental brief and requesting that it be filed in his appeal. App. Dkt. #18.[10] Beyond conclusory allegations, Mr. Thorson does not demonstrate that his appellate counsel was ineffective, that there was cause for his procedural default, or that he suffered actual prejudice.[11] The Court concludes that Mr. Thorson's claims are procedurally barred. Nevertheless, the Court will review the merits of Mr. Thorson's six remaining claims in an abundance of caution.

---

[10] Mr. Thorson's request was ultimately denied, and his brief stricken. App. Dkt. #19.

[11] Demonstrating actual prejudice is not an insignificant burden. *See United States v. Dean*, 169 F. Supp. 3d 1097, 1108–09 (D. Or. 2016) (collecting cases establishing that showing for actual prejudice is substantially greater than plain error and requires that substantial rights were affected—that "the probability of a different result is sufficient to undermine the confidence in the outcome of the proceeding").

**D. Sufficiency of the Evidence Claim**

Mr. Thorson challenges both sentences on what he characterizes as "sufficiency of evidence" grounds. But Mr. Thorson's challenge to his sentence on the first charge turns on the required elements of a conviction under 18 U.S.C. § 2251(a). *See* Dkt. #1 at 23 (focusing on "essential elements," "every element," etc.). Specifically, Mr. Thorson argues that the government was required to prove that he "had knowledge or intent to transport any thing [sic] in interstate commerce." Dkt. #1 at 4. Mr. Thorson makes a more traditional sufficiency of the evidence argument with regard to his conviction and sentence under 18 U.S.C. § 2252(a)(4)(B), arguing that the Government had to, but did not, prove that Mr. Thorson had "possession or even knowledge of the existence of 3 DVDs" containing visual depictions of child pornography. *Id.* Mr. Thorson indicates that he attempted to raise these issue in his pro se supplemental brief before the Ninth Circuit, but that the issue was not considered. *Id.*

The Government, however, persuasively argues that Mr. Thorson's "sufficiency of evidence" challenges are not available to him here. First, the Government argues that sufficiency of the evidence challenges cannot be raised in Section 2255 proceedings. Dkt. #33 at 12 ("*Brule v. United States*, 240 F.2d 589, 589 (9th Cir. 1957) (finding that § 2255 cannot be used to challenge sufficiency of evidence to convict); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) (challenge to sufficiency of the evidence is procedurally defaulted if it is not raised on direct appeal)."). The Court agrees. *See also*, *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (evidenced based claim calling "into doubt the overall weight of the evidence against" petitioner not cognizable under Section 2255). The Court also agrees with the Government's second argument that Mr. Thorson waived this claim by failing to make a motion for acquittal after trial. *United States v. Stauffer*, 922 F.2d 508, 511 (9th Cir. 1990) (failure to make a motion

for acquittal at the close of evidence waives "any claim to reversal based on insufficiency of the evidence") (cited by the Government at Dkt. #33 at 12). Mr. Thorson's arguments also fail on the merits.

### 1. Challenge to Sentence for Violation of 18 U.S.C. § 2251(a)

Relying on his unsupported contention that Congress did not intend "to criminalize simple possession of 'home grown child pornography' not intended for exchange, trade or distribution," Mr. Thorson argues that the Government was required to prove that he had knowledge or intent to transport the visual depictions over state lines. Dkt. #1 at 21. Mr. Thorson maintains that the Government's mere allegation "that the images were produced using items of personal property that at some time were in commerce" is constitutionally unsound. *Id.* at 22.

But Mr. Thorson's reading of 18 U.S.C. § 2251(a) is not correct and relies on selective quotation of that statute. That statute provides, in relevant part, that criminal liability attaches

> [1] if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, [2] if that visual depition was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, **or** [3] if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (emphasis added).[12] Mr. Thorson's attempt to read the disjunctive statute as requiring that the Government prove each of the three jurisdictional hooks fails.[13]

---

[12] The Court notes that this is also consistent with the Ninth Circuit's Model Instruction. *See* Model Crim. Jury Instr. 9th Cir. 8.181.

[13] Further, Thorson's argument relies primarily on *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003). *See* Dkt. #1 at 26 (pointing to *McCoy's* conclusion "that simple intrastate possession of home-grown child pornography not intended for distribution or exchange is 'not, in any sense of the phrase, economic activity'"). But the Government points to several cases decided after *McCoy* that support a disjunctive reading of 18 U.S.C. § 2251(a) and cites to the relevant

ORDER – 14

### 2. Challenge to Sentence for Violation of 18 U.S.C. § 2252(a)(4)(B).

As related to 18 U.S.C. § 2252(a)(4)(B), Mr. Thorson's more traditional sufficiency of the evidence argument is that the Government failed to provide sufficient evidence that he possessed three DVDs continuing visual depictions of child pornography. Dkt. #1 at 24–26. But the Government fully rebuts Mr. Thorson's unsupported argument by detailing the evidence introduced at trial that supported the jury's finding of possession. Dkt. #33 at 15–16. Mr. Thorson may establish that alternative conclusions were possible but cannot carry his burden on a sufficiency of the evidence challenge. *See United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (evidence must preponderate heavily against the verdict).

## E. Congressional Overreach

Closely following his argument that 18 U.S.C. § 2251(a) requires proof of intent to distribute child pornography across state lines, Mr. Thorson argues that if it does not, then Congress lacks "the power to regulate the personal private property of the ultimate consumer for eternity simply because such items of personal private property has at some time passed through one of the many channels of commerce." Dkt. #1 at 27. Essentially, Mr. Thorson argues that the Commerce Clause cannot sustain the criminal statutes at issue. *Id.* at 27–32. But Mr. Thorson's argument is built on generalities derived from cases dealing with other exercises of Congressional power. And indeed, the argument breaks down precisely because, as the Government points out, the Ninth Circuit has rejected Mr. Thorson's conclusory arguments in the context of 18 U.S.C. § 2251. *See United States v. McCalla*, 545 F.3d 750, 755–56 (9th Cir. 2008) (specifically upholding 18 U.S.C. § 2251(a) against a commerce clause challenge) (cited at Dkt. #33 at 16); *see also United States v. Ferguson*, 560 F.3d 1060, 1064–65 (9th Cir. 2009) (characterizing

---

evidence in the record establishing the essential elements of Thorson's conviction. *See* Dkt. #33 at 14 (gathering cases and citing to record).

*McCalla* as "holding that as-applied challenges relying on the 'de minimis' character of the defendant's actions are foreclosed"). Mr. Thorson's conclusory arguments cannot overcome this clear precedent.

### F. Speedy Trial Act of 1974

Mr. Thorson argues that his speedy trail rights were violated because he was not brought to trial until 255 days after his arrest. Dkt. #1 at 6. But the Court has already rejected Mr. Thorson's argument that his speedy trial rights were violated. Crim. Dkt. #54 (rejecting motion as untimely and rejecting motion on the merits). Mr. Thorson argues that the Court's earlier ruling erred in treating his motion as untimely. Dkt. #1 at 33 (citing *United States v. Alvarez-Perez*, 629 F.3d 1053 (9th Cir. 2010) (indicating court's unwillingness "to find a motion untimely when it is made 'prior to trial'")). But even if Mr. Thorson is correct on this point, his argument misses the fact that the Court also determined that there was no violation of Mr. Thorson's speedy trial rights. Crim. Dkt. #54 at 2–3.

Secondly, Mr. Thorson argues that the Court erred in previously finding that "the ends of justice" warranted a continuance—excluded time under the speedy trial act. Dkt. #1 at 33–36. Specifically, Mr. Thorson argues that a continuance was not permissible because it was due to court congestion and was necessary because the Government failed to timely provide discovery. *Id.* at 34. But again, Mr. Thorson fails to acknowledge that the continuance was because of the volume of materials produced in discovery and to allow defense counsel an opportunity to review those materials.[14]

---

[14] The one case cited by Thorson—a district court case from California—is distinguishable on its facts. Dkt. #1 at 35 (citing *United States v. Rodriguez*, 2014 U.S. Dist. LEXIS 84429 (S.D. Cal. June 19, 2014)). There, a continuance was necessary because the government did not disclose documents until the eve of trial, not because of the volume of materials provided.

ORDER – 16

### G. Witness Perjury

Mr. Thorson argues that his conviction and sentence are tainted because "prosecution witnesses perjured themselves." Dkt. #1 at 10. Specifically, Mr. Thorson argues that Agent Sutehall perjured himself in testimony related to footage recorded by security cameras. *Id.* at 45–47. Mr. Thorson also argues that Officer Gallagher testified inconsistently in pre-trial proceedings and at trial regarding the circumstances under which he examined Mr. Thorson's phone. *Id.* at 47–50.

As the Government points out, for witness perjury to result in vacation of a conviction, Mr. Thorson "must show that: (1) the testimony was perjured; (2) it was material; and (3) it was knowingly and intentionally used by the government." Dkt. #33 at 20 (citing *United States v. Reynoso-Ulloa*, 548 F.2d 1329, 1340 (9th Cir. 1977)). But Mr. Thorson points only to inconsistencies and offers no proof of perjured testimony. *United States v. Bischel*, 61 F.3d 1429, 1436 (9th Cir. 1995) (noting impact of possible perjury is diminished by lack of evidence of intent, corroboration of testimony, cross-examination, and impeachment). Mr. Thorson cannot establish perjury solely on the basis of his unadorned argument. *Bonin v. Calderon*, 59 F.3d 815, 844 (9th Cir. 1995) (rejecting sworn declaration as patently unbelievable). Further, Mr. Thorson had the opportunity, on cross-examination, to explore any inconsistencies he believes existed. Mr. Thorson's arguments do not justify relief.[15]

### H. Judicial Bias

As he has previously, Mr. Thorson argues that the Undersigned was and is biased:

> The Judge was the government's advocate during pretrial and argued all contested motions for the government and then ruled in favor of his own arguments. Even to the point of saying the police could search a cell phone to get probable cause

---

[15] The Government concedes that Officer Gallagher may have testified inconsistently with his written report. Dkt. #33 at 22–23. However, and as the Government notes, Thorson does not make any argument that this would have affected the jury's ultimate verdict.

ORDER – 17

to get a warrant to search the cell phone. The Judge was openly flirting and bantering with the female prosecutor and seeking her approval or opinion before ruling in her favor.

Dkt. #1 at 13. Mr. Thorson has repeatedly made these same claims and the Court has repeatedly found that Mr. Thorson points to no bias or basis for recusal and merely disagrees with the Court's previous rulings. Crim. Dkts. #50 and #52; Dkt. #35 and #36. Mr. Thorson continues to tilt at windmills and the Court will not address the issue yet again.

**I. *Faretta* Hearing**

Mr. Thorson also again argues that his right to proceed pro se was violated:

Defendant consistently attempted to go pro se during trial, pretrial and appeal, was repeatedly denied until all pretrial motions had been ruled on and he wouldn't have time to prepare for trial, a week before trial he was ambushed with a *Faretta* hearing with no time to prepare for trial and no way to address the pretrial issues never raised, no time to review discovery. He was put at a distinct disadvantage, so declined to attempt trial at that great disadvantage. The *Faretta* hearing was untimely.

Dkt. #1 at 14.

Mr. Thorson does not provide any authority supporting his contention that the *Faretta* hearing was untimely and maintains only that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." Dkt. #1 at 57 (quoting *Faretta v. California*, 422 U.S. 806, 817 (1975)). But the Court has previously rejected this argument in its Order Denying [Mr. Thorson's] Rule 33 Motion for a New Trial. Crim. Dkt. #135 at 3 ("Although Mr. Thorson did not move to proceed pro se in any of the five motions, the Court nonetheless held a *Faretta* hearing on January 30, 2017. *See* [Crim. ]Dkt. #66. Following questioning by the Court, Mr. Thorson declined to proceed pro se."); *Id.* at 6 ("[D]efendants must make an unequivocal request to proceed pro se before the Court holds a hearing (known as a *Faretta* hearing) to determine 'whether the defendant is knowingly and intelligently forgoing his

right to appointed counsel.'") (citing *United States v. Farias*, 618 F.3d 1049, 1051–52 (9th Cir. 2010). Further, in replying to the Government's Answer, Mr. Thorson abandons this argument and effectively concedes the issue.

### J. Summary Conclusion

Mr. Thorson's various arguments do not hold up to serious consideration. Mr. Thorson relies on unsupported factual allegations, selective quotations that misrepresent the record, and general legal principles that have limited application in his case. Further, Mr. Thorson's briefing often obscures the source of materials making it difficult, at times, to discern whether Mr. Thorson's argument relies on legal authority, the record, or solely his own assertions. As a whole, Mr. Thorson's briefing is also overly repetitive, belaboring arguments that this Court has already rejected or factual assertions that the jury presumably did not credit. Section 2255 relief is not appropriate.

### K. Evidentiary Hearing

Evidentiary hearings are required on Section 2255 motions where a petitioner (1) alleges specific facts which, if true, would entitle him to relief; and (2) the petition, files, and record of the case do not conclusively demonstrate that the petitioner is not entitled to relief. *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) (citing 28 U.S.C. § 2255). However, an evidentiary hearing is not required for a petition consisting only of conclusory allegations. *United States v. McMullen,* 98 F.3d 1155, 1158 (9th Cir. 1996). Because Mr. Thorson relies only on unsubstantiated allegations, no evidentiary hearing is required.

### L. Certificate of Appealability

A petitioner seeking post-conviction relief under Section 2255 may appeal this Court's dismissal of his petition only after obtaining a Certificate of Appealability ("COA") from a

district or circuit judge. The Court finds that a COA is not warranted in this case. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). As discussed above, Mr. Thorson has not done so, and the Court finds no basis to issue a COA.

## IV. CONCLUSION

Having considered Mr. Thorson's § 2255 Motion, the relevant briefing, and the remainder of the record, the Court finds and ORDERS:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. #1) is DENIED.
2. No Certificate of Appealability shall be issued.
3. This matter is now CLOSED.
4. The Clerk of the Court is directed to mail a copy of this Order to Robert D. Thorson, No. 48042-086, FCI-Sheridan, Federal Correctional Institution, P.O. Box 5000, Sheridan, OR 97378.

DATED this 9th day of August 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE